**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**BENJAMIN N. MOOTS,**

      **Plaintiff,**

**vs.**                         **Case No. 4:10cv98-SPM/WCS**

**WALTER McNEIL, et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff has filed a second amended complaint, doc. 16, which has been reviewed as required by 28 U.S.C. § 1915A.  Plaintiff's second amended complaint was filed on April 30, 2010, although this action was initiated on March 15, 2010.  Docs. 1, 2.

Plaintiff alleges that he suffers from a condition known as "gynecomastia, an enlargement of male breast tissue."  Doc. 16, p. 4.  Medical tests reveal no underlying cause for the condition, and no cancerous tissue is present.  *Id.*  Plaintiff alleges his condition is "physically painful, sore, tender, and prone to swelling . . . " *Id.*, at 5.

Plaintiff alleges that he has been given nothing "more than ibuprofen" for his complaints of pain and tenderness. *Id.*

Plaintiff requested additional treatment for the condition, but was told by Dr. Torres, "there's nothing to worry about" and it is "only cosmetic." *Id.*, at 5. Plaintiff contends that Dr. Torres told him that the Florida Department of Corrections "does not provide cosmetic treatment." *Id.*

Plaintiff alleges that the condition has caused him to suffer from feelings of depression and anxiety. *Id.* Plaintiff also contends that instead of offering him medical treatment, Defendants segregate him from the general inmate population by placing him in protective management due to his "observable 'female characteristics.' " *Id.* Plaintiff contends he is prejudged because of his physical appearance, and subjected to "improperly conducted strip searches,[1] in public areas which is a violation of Department" rules, so that his condition is noticeable to staff and inmates who are present, causing him further harassment and ridicule. *Id.*, at 6.

Plaintiff alleges that when he reentered the Department of Corrections in June of 2006, he was diagnosed with gynecomastia. Doc. 16, p. 4. In July of 2006, Plaintiff underwent medical tests to determine if there were any cancerous tissue present, but no malignancies were found. *Id.* An "ultrasound identified 'bilateral homogeneous soft tissue structures.' " *Id.* Plaintiff contends Defendant Blakenship knew of Plaintiff's suffering when Plaintiff sent a grievance requesting mastectomy surgery to remedy his

---

[1] Plaintiff has not presented a viable claim concerning the improperly conducted strip searches. Plaintiff has not named any person responsible for those searches, and it is unlikely that any of the medical personnel who are named as Defendants conduct strip searches. That responsibility would be carried out by correctional officers, not my medical staff.

problem.  *Id.*, at 6.  Defendant Blakenship denied Plaintiff's grievance on January 7, 2010, stating that "a mammogram was ordered and no other medical procedures can be done until this test is completed, which Plaintiff refused at the advice of [Doctor] Torres as 'medically unnecessary.' "  *Id.*, at 7.  Plaintiff contends this denial of his grievance, and the requirement to have a "medically unnecessary mammogram" was deliberate indifference to Plaintiff's serious medical needs.  *Id.*

Plaintiff then filed an appeal in mid-January, 2010, to Defendant McNeil and Defendant Rahangdale, the Director of Health Services.  *Id.*, at 7.  Defendants had thirty days to answer the appeal, and Plaintiff claims they "intentionally declined to do so."  *Id.*  Plaintiff further contends that Defendant Rahangdale and McNeil are responsible for the Department's policy prohibiting "cosmetic procedures."  *Id.,* at 7-8.  Plaintiff alleges the refusal to respond to his grievance by mid-March, 2010, shows they are deliberately indifference to his serious medical needs.  *Id.*, at 8.

On February 21, 2010, Plaintiff's mother sent an email to Defendant Rahangdale complaining about medical care offered to Plaintiff.  *Id.*, at 8.  The email was "delegated to Defendant Baker for Response."  *Id.*  Defendant Baker replied to the email message and advised that Plaintiff was being given proper medical care.  *Id.*, at 8-9.  Plaintiff contends, however, that Defendant Baker was aware that Plaintiff needed to have a double mastectomy but was refused, and Defendant Baker refused to "make any additional treatment available evidencing deliberate indifference . . . ."  *Id.*, at 9.

Plaintiff also alleged that on March 22, 2010, he met with Defendants Baker and Blankenship and asked about further treatment.  *Id.*, at 9.  Plaintiff was told there was no treatment they could offer him.  *Id.*  Plaintiff asked about receiving a particular drug,

"Tamixofen",[2] to reduce irritation and size of the tissue, but was told "The Governor told me to cut 23 million dollars from my budget, I can't treat your condition." *Id.*

**Analysis**

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hill v. Dekalb Regional Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* <u>Laaman v. Helgemoe</u>, 437 F. Supp. 269, 311 (D. N.H. 1977). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." <u>Mann v. Taser Intern., Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* <u>Hill</u>, 40 F.3d at 1188-89, and <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003); *see also* <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious' ").

---

[2] Tamoxifen is a nonsteroidal oral antiestrogen used as the citrate salt in the treatment and prophylaxis of breast cancer. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS, available at: http://www.mercksource.com (Medical Dictionary link).

The concept of deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Subjective recklessness, as defined in criminal law, is the standard which must be shown for an official's actions to rise to the level of deliberate indifference. *Id*. Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a basic human need. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Combining the standards from Farmer and Estelle, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Put another way, once a prisoner shows that he has a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

Medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495,

1505 (11th Cir. 1991), citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

*See also* Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993). For example, in

Estelle, the prisoner received treatment for his back injury (bed rest, muscle relaxants

and pain relievers), but complained that more should have been done in the way of

diagnosis, such as an X-ray or other tests. The Court rejected this as a basis for

liability:

> But the question whether an X-ray--or additional diagnostic techniques or
> forms of treatment--is indicated is a classic example of a matter for
> medical judgment. A medical decision not to order an X-ray, or like
> measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293. A prisoner's medical need may be found to be

serious if the failure to treat the condition could result in significant further injury or an

unnecessary infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

However, routine discomfort does not qualify as a serious medical need. *Id.* Further,

when an inmate has received some medical attention or care and the dispute involves

the adequacy of the care, federal courts are reluctant to second guess medical

judgments and find an eighth amendment violation. Harris v. Thigpen, 941 F.2d 1495,

1507 (11th Cir. 1991).

There have been numerous cases which have addressed the related problem of

whether prisons must provide surgery or hormone therapy for such conditions as

gender identity disorder (GID), gender dysphoria, or transsexualism. The cases are

useful because these medical conditions create much the same sort of problems for a

prisoner as the condition suffered by Plaintiff.

In De'Lonta v. Angelone, 330 F.3d 630 (4th Cir. 2003), plaintiff De'Lonta, who

was born as a man, suffered from GID, "a disorder characterized by a feeling of being

trapped in a body of the wrong gender." De'Lonta, 330 F.3d at 631.  De'lonta had

undergone various procedures to make herself appear more feminine, including

dermabrasions, a chemical face peel, and estrogen treatments "to slow hair growth,

soften her skin, and develop breasts and other female characteristics." Id., at 631-632.

Since 1983 when De'lonta entered the custody of the Virginia Department of

Corrections, doctors had diagnosed her as suffering from GID, and  in 1993, De'lonta

began receiving estrogen therapy for the disorder while in Greensville Correctional

Center. Id., at 632.  When the treatments were abruptly discontinued two years later

pursuant to a new policy, she "developed an uncontrollable urge to mutilate her

genitals." Id.  The Fourth Circuit held that the district court should not have dismissed

her claims, finding that "protection against continued self-mutilation constitutes a serious

medical need to which prison officials may not be deliberately indifferent." Id., at 634.

The court distinguished Maggert v. Hanks, 131 F.3d 670 (7th Cir.1997) (holding that

prisoner was not constitutionally entitled to curative treatment for gender dysphoria) as

a case where there was no indication that prisoner was at risk for self-mutilation or other

serious bodily harm.  The court also held that it was wrong to dismiss the claim

concerning discontinuation of the hormone therapy as simply a disagreement with the

judgment of prison's doctors.  The court stated that because the "limited record" existing

showed the discontinuation was due to a policy not to provide hormone therapy, it

supported "the inference that Appellees' refusal to provide hormone treatment to

De'lonta was based solely on the Policy rather than on a medical judgment concerning De'lonta's specific circumstances." *Id.*, at 634-635.

In Maggert v. Hanks, 131 F.3d 670 (7th Cir. 1997), a psychiatrist refused to prescribe estrogen for the prisoner, who allegedly suffered from gender dysphoria, instead recommending that he continue with counseling with the prison psychologist. Maggert, 131 F.3d at 670 -71. Acknowledging that gender dysphoria is a serious psychiatric disorder, the Court considered that treatments "necessary to 'cure' a prisoner's gender dysphoria . . . are protracted and expensive." *Id.*, at 671. The court further held:

> A prison is not required by the Eighth Amendment to give a prisoner medical care that is as good as he would receive if he were a free person, let alone an affluent free person. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). He is entitled only to minimum care. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Wellman v. Faulkner*, 715 F.2d 269, 271 (7th Cir. 1983); *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988).

Maggert v. Hanks, 131 F.3d at 671-72. The court noted that in most cases, medicare and standard health care plans do not pay for sex-change operations; rather, one desiring to have a sex change operation for gender identity disorder would be required to pay the costs of treatment out of his own pocked. *Id.*, at 672. The court said:

> Withholding from a prisoner an esoteric medical treatment that only the wealthy can afford does not strike us as a form of cruel and unusual punishment. It is not unusual; and we cannot see what is cruel about refusing a benefit to a person who could not have obtained the benefit if he had refrained from committing crimes. We do not want transsexuals committing crimes because it is the only route to obtaining a cure.

Maggert, 131 F.3d at 672. Finally, the court concluded that gender dysphoria is not "a severe enough condition to warrant expensive treatment at the expense of others." *Id.*

In a more recent gender identity disorder case, the District Court of Massachusetts also noted that some gender identity disorders are not so severe or profound as to require sex reassignment surgery, hormone therapy, or even psychotherapy. Kosilek v. Maloney, 221 F.Supp.2d 156, 184 (D. Mass., 2002),[3] *quoting* Farmer v. Moritsugu, 163 F.3d 610, 615 (D.C. Cir. 1998) (finding that the B.O.P. policy allowing for three treatment options for transsexualism was constitutional) and stating "merely because someone is a transsexual, it does not inexorably follow that he or she needs psychotherapy" or other forms of treatment. The court pointed out that if some form of treatment has been provided, prison officials are "not constitutionally required to provide . . . pre-operative hormone treatment and a sex change operation." Kosilek, 221 F.Supp.2d at 185, *citing* Meriwether v. Faulkner, 821 F.2d 408, 413-14 (7th Cir. 1987); *see also* Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986); Lamb v. Maschner, 633 F.Supp. 351, 353-354 (D. Kan. 1986). Likewise, other courts of appeal have held that denial of hormone therapy to treat transsexualism is not deliberate indifference. Praylor v. Texas Dept. of Criminal Justice, 430 F.3d 1208, 1209 (5th Cir. 2005); *citing to* White v. Farrier, 849 F.2d 322 (8th Cir. 1988) (acknowledging that transsexualism is a serious medical condition, but holding that declining to provide hormone therapy did not constitute deliberate indifference to that medical need).

In this case, Plaintiff suffers from gynecomastia. Plaintiff's condition has not been "diagnosed by a physician as mandating treatment or one that is so obvious that

---

[3] Kosilek v. Maloney, *supra*, was a case challenging a Massachusetts DOC policy aimed to maintain a transsexual inmate in the same condition he was in when incarcerated. 221 F.Supp.a2d at 159-160. The blanket policy categorically excludes the possibility of sex reassignment surgery. *Id.,* at 160.

even a lay person would easily recognize the necessity for a doctor's attention." <u>Hill</u>, 40 F.3d at 1187. Indeed, the physicians do not recommend surgery. Plaintiff does not allege a condition that even a lay person would recognize would cause significant pain if not treated. While Plaintiff has alleged that he is subjected to psychologically challenging problems, he has not shown that he has a condition as severe as gender identity disorder or transsexualism. Further, even in the even more difficult case of protecting the safety of a transsexual prisoner, safety concerns may be provided for without requiring the more drastic remedy of surgery. <u>Kosilek,</u> 221 F.Supp.2d at 194, *citing* <u>Farmer</u>, 511 U.S. at 830-31, 114 S.Ct. 1970 (case in which a transsexual prisoner alleged deliberate indifference to his safety after he was beaten and raped while in the general population at a federal penitentiary). Thus, Plaintiff has failed to state a claim under the Eighth Amendment.

Accordingly, it is **RECOMMENDED** that Plaintiff's second amended complaint, doc. 16, be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on May 11, 2010.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**